# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

SHANNON BROWN                                    CIVIL ACTION

VERSUS                                           NO. 11-2267

WARDEN BURL CAIN                                 SECTION "S"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Shannon Brown, is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] Brown and a co-defendant, Wendell James, were indicted by a grand jury in St. John the Baptist Parish on June 9, 2004, and charged with the first degree murder of Lionel Griffin.[3] The State amended the indictment on September 16, 2006, to charge Brown and James with second degree murder.[4]

The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> On the evening of April 9, 2004, Ronald Dunn, Jr., Pettus Prine, Charles Palmer, Nathaniel Hall, Darrin Dillion, Von Dunn and Lionel Griffin were visiting their friend, Donovan Bailey, at his house on East Twenty-fourth Street in Reserve, Louisiana. As the group stood talking in Bailey's front yard, Donovan Bailey pointed out an older model, yellow Buick that was approaching the group from Sweet Lorraine Street, which connects Twenty-fourth and Twenty-fifth Streets. Ronald Dunn recognized the car from previous encounters with its occupants.
>
> Ronald Dunn testified that, as the car approached them, he recognized Shannon Brown, who is also known as "Shane Brown," seated on the passenger side of the car. According to Ronald Dunn, he and Brown stared at each other as the car slowly passed by.[5] Ronald Dunn testified that Brown turned his head and

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 6, Indictment, 6/9/04.

[4]St. Rec. Vol. 2 of 6, Amended Indictment, 9/16/06.

[5]"FN1. At the same time, Ronald Dunn saw his mother, Elaine Dunn, driving her car toward the group, approaching the yellow car from the rear. Because Ronald thought that Brown might shoot, he shouted to his mother to leave the area."

grabbed a gun from inside the car. Ronald, who was distracted by warning his mother of possible danger, then heard shots fired at the group and ran away. Ronald did not see who fired the shots but testified that it sounded like the shots came from the passenger side of the yellow car. At trial, Ronald identified the defendant as the passenger of the yellow car who he saw with a gun immediately before shots were fired at his group.

Von Dunn stated that he knew Brown because Brown had given him a ride in the past. Von Dunn saw defendant fire shots at his group of friends on the night of April 9, 2004. At trial, Von Dunn identified the defendant as the passenger of the yellow car who fired shots at his group.

Nathaniel Hall, Jr. testified that, Brown, who was the passenger of a slow-moving yellow car, was hanging out of the car window, shooting at him and his friends on April 9, 2004. He testified that he saw defendant fire the first shot. At trial, Hall identified the defendant as the passenger of the yellow car who fired shots at his group.

Pettus Prine testified that, on April 9, 2004, he was in front of Donovan Bailey's house sitting and talking with his girlfriend in her car when he noticed a yellow car moving slowly towards them on the street. He testified Brown, the passenger of the slow-moving car, was "fussing." Pettus Prine saw Brown put his head out of the car window with a pistol in his hand and shoot into the crowd; Prine saw defendant fire the first shot. Pettus Prine knew Brown prior to the incident from school. At trial, Prine identified the defendant as the passenger of the yellow car who fired shots at his group.

Donovan Bailey testified he saw the yellow car coming down the street and recognized it from an incident his friends had been involved in two nights ago. According to Donovan Bailey, defendant and Ronald Dunn made eye contact and, as the car moved slowly, defendant stuck his head out of the car window and said something to Ronald Dunn. Bailey then saw defendant pull his head back into the car and reach for something in the car. Donovan Bailey did not see defendant fire the shots but heard shots come from the passenger side of the car. At trial, Bailey identified the defendant as the passenger of the yellow car. At trial, Ronald Dunn, Von Dunn, Nathaniel Hall, Pettus Prine, and Donovan Bailey all testified that no one from their group had a weapon that night.

After the car left the scene, the group members saw Lionel Griffin lying in the street, bleeding from his head. Although Lionel Griffin was rushed to the hospital, the damage from the wound was too severe and he did not survive. The Jefferson Parish Coroner determined that Lionel Griffin died as a result of a gunshot wound to his head. Davis[6] stated that he could not determine when the

---

[6]"See footnote 2 in the Fifth Circuit opinion, which states: "Michael Davis, who actually collected the evidence, reviewed Deputy Brian White's report and believed that the distance between the

casings that he recovered at the scene were fired or the order in which they were fired. Further, no detectable DNA was lifted from any of the casings. Michael Davis agreed that the evidence could indicate that more than one person was firing at the scene. Based on the evidence presented to him, Michael Davis was unable to determine who fired the shots in question.

Deputy Brian White of the St. John the Baptist Parish Sheriff's Office was the responding officer to the shooting. Deputy White prepared a report on the date of the incident, which included approximate distances from which evidence was collected in relation to the victim's body. He reported that he saw three 9mm spent casings approximately 68 feet from the victim's body but on the opposite side of the road from the Bailey residence. Deputy White found two .45 caliber casings approximately 268 feet from the victim but on the same of the road as the residence.

Patrick Lane, an expert in the field of firearms identification, testified that the badly-damaged, copper-jacketed bullet fragment extracted from the victim at the Jefferson Parish morgue was most consistent with a .45 caliber firearm. He examined two .45 caliber casings and determined they were all fired from the same firearm. He also testified that there were sufficient markings on each of the three 9mm cartridge casings to be able to establish that they all were fired from the same firearm. Patrick Lane testified that there were at least two different guns of different calibers that fired those casings on April 9, 2004.

Detective Lieutenant Kenneth Mitchell of the St. John the Baptist Parish Sheriff's Office, the case officer involved in this investigation, testified that when he arrived at the scene, Deputy Brian White indicated to him that there was a shooting and the victim was being transported to the hospital. Detective Mitchell observed three spent 9mm casings and two .45 caliber casings some distance away. He also observed a vehicle with a bullet hole in its front bumper.

Immediately after leaving the scene, Detective Mitchell interviewed Darrin Dillion, Donovan Bailey, and Von Dunn, who all identified Shannon Brown as the passenger of the yellow car who opened fire on them. Detective Mitchell interviewed Ronald Dunn, who said that shots came from the passenger side of the vehicle. According to Detective Mitchell, Von Dunn said he saw shots coming from both the passenger side and the driver side of the car.

A couple of days after the shooting, Detective Mitchell interviewed Nathaniel Hall and Pettus Prine, who both stated that they were standing with their friends in Donovan Bailey's front yard when a yellow vehicle passed by the house. They stated that the passenger opened fire on them. They both identified defendant as the shooter.

_____

two sets of casings was substantially shorter."

On the day after the shooting, Detective Mitchell interviewed Shannon Brown at the sheriff's office. Brown was advised of his rights and questioned as a suspect in the shooting. Defendant denied leaving his house on Friday, April 9, 2004.

Subsequently, Detective Mitchell presented a photographic lineup that included defendant to various witnesses. Von Dunn, Donovan Bailey, Darrin Dillion, Pettus Prine, and Ronald Dunn identified defendant from the lineup as the shooter.

At trial, the defense presented testimony from co-defendant, Wendell James. James stated that, on April 9, 2004, he was driving defendant home and defendant asked to stop at someone's house on Twenty-fifth Street in Reserve, Louisiana.[7] When James and Brown learned that the person was not home, they decided to take Twenty-fourth Street to return to Airline Highway. On Twenty-fourth Street, James and Brown encountered a group of males on the side of the road who tried to block the road as they approached.

According to Wendell James, a light-colored male started shooting at his car. Wendell James said that the defendant shielded James from the shots with his body. Further, defendant immediately told James to leave the area, stuck his hand out of the car window, and shot back two times. James stated that the light-colored male shot first and defendant retaliated to protect them. James testified that bullets hit the side of his car, but, upon cross examination, he admitted that he no longer possessed the car because he gave the car to the defendant after the incident. Wendell James denied shooting at anyone.

At trial, Wendell James said that he did not know if defendant had "bad blood" with the people in the street. Finally, Wendell James admitted that he lied to Detective Mitchell in their initial interview when he said that he spent the night at defendant's house, never left the house on Friday, April 9, 2004, and never drove a yellow Buick.

(footnotes in original) State v. Brown, 968 So.2d 766, 768-771 (La. App. 5th Cir. 2007);

State Record Volume 5 of 6, Louisiana Fifth Circuit Court of Appeal Opinion, 07-KA-228, September 25, 2007.

---

[7]"FN3. James testified that the car belonged to him even though it was registered in another person's name."

Brown was tried separately before a jury on September 19 through 21, 2006, and was found guilty as charged of second degree murder.[8] The state trial court sentenced him on November 8, 2006, to life imprisonment without benefit of parole, probation, suspension of sentence.[9] The court also denied Brown's motion for new trial.[10]

On direct appeal, Brown's counsel asserted three assignments of error:[11] (1) The evidence was not sufficient to prove beyond a reasonable doubt that Brown did not act in self-defense. (2) The evidence was not sufficient to support the verdict, because it proved at best that the killing was a manslaughter done in the heat of passion as a result of a confrontation brought on by the gang lurking in front of Bailey's residence. (3) The court should have declared a mistrial in view of the State's improper closing argument reference to Brown's failure to testify at trial. Counsel also requested a review for errors patent on the face of the record.

---

[8]St. Rec. Vol. 1 of 6, Minute Entry, 9/18/06; Trial Minutes, 9/19/06; Trial Minutes, 9/20/02; Trial Minutes, 9/21/06; St. Rec. Vol. 2 of 6, Verdict of the Jury, 9/21/06; Trial Transcript, 9/19/06; St. Rec. Vol. 3 of 6, Trial Transcript (continued), 9/19/06; Trial Transcript, 9/20/06; St. Rec. Vol. 4 of 6, Trial Transcript (continued), 9/20/06; Trial Transcript, 9/21/06.

[9]St. Rec. Vol. 1 of 6, Sentencing Minutes, 11/8/06; St. Rec. Vol. 4 of 6, Sentencing Transcript, 11/8/06.

[10]Id.

[11]St. Rec. Vol. 5 of 6, Appeal Brief, 07-KA-0228, 5/7/07.

Brown filed a pro se supplemental memorandum raising two assignments of error:[12] (1) The State commented during closing argument on Brown's failure to testify. (2) The State failed to disclose pictures of the victim before using them at trial.

On September 25, 2007, the Louisiana Fifth Circuit affirmed the conviction and sentence finding no merit in the appeal issues.[13] The Louisiana Supreme Court also denied Brown's related writ application without stated reasons on April 4, 2008.[14] A year later, on September 19, 2008,[15] the court also denied Brown's pro se request for reconsideration without stated reasons.

Brown's conviction became final 90 days later, on December 18, 2008, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1); Wilson v.

---

[12]St. Rec. Vol. 5 of 6, Supplemental Brief, 07-KA-0228, 7/18/07.

[13]State v. Brown, 968 So.2d at 766; St. Rec. Vol. 5 of 6, 5th Circuit Opinion, 07-KA-228, 9/25/07.

[14]State v. Brown, 978 So.2d 325 (La. 2008); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2007-KO-2193, 4/4/08; St. Rec. Vol. 5 of 6, Copy of La. S. Ct. Writ Application, unfiled, dated 10/22/07; La. S. Ct. Letter, 2007-KO-2193, 11/13/07 (showing filing on 11/13/07 and postmark on 10/23/07).

[15]State v. Brown, 992 So.2d 958 (La. 2008).

Cain, 564 F.3d 702 (5th Cir. 2009) (timely filed motion for rehearing must be considered in determining the finality of a conviction).[16]

On March 16, 2009, Brown submitted an application for post-conviction relief in the state trial court asserting five (5) grounds for relief:[17] (1) Counsel gave ineffective assistance through his (a) failure to investigate; call witnesses, specifically Alice Cook III and Jamie Brock; or present an available defense at trial; (b) failure to object to inadmissible hearsay; (c) allowing the State to discontinue the testimony of Elaine Dunn; and (d) failure to make the proper showing to procure funds for an investigator. (2) The trial court exceeded its jurisdiction by authorizing a conviction for second degree murder by bill of information or amended indictment. (3) The prosecution used his post-arrest silence against him at trial. (4) He was denied his confrontation rights when the State allowed Officer Mitchell to testify regarding statements made by Darrin Dillon that Brown was the shooter and through the presentation of his co-defendant's testimony. (5) The prosecutor knowingly used perjured testimony to obtain the conviction.

The state trial court conducted a hearing on the application on November 9, 2009, at which Brown's post-conviction counsel focused the argument and testimony on certain

---

[16]In its submissions to this court, the State has not noted Brown's filing of the application for reconsideration and has not provided this court with certified copies of Louisiana Supreme Court records concerning any review of this decision. Affording Brown every benefit, I will assume that the request for reconsideration was timely filed for purposes of determining the finality of his conviction.

[17]St. Rec. Vol. 5 of 6, Uniform Application for Post-Conviction Relief, dated 3/16/09 (no file-stamped copy in the record).

aspects of the ineffective assistance of counsel claim.[18] Thereafter, on December 1, 2009, the state trial court issued written reasons denying Brown's application.[19] The court determined that Brown's third claim, regarding the State's reference to his silence, was procedurally barred from review under La. Code Crim. P. art. 930.4(A), as repetitive of matters addressed on appeal. The court also found no merit in Brown's other claims.

Brown's counsel sought review in the Louisiana Fifth Circuit, raising only two of the post-conviction claims:[20] (1) Counsel gave ineffective assistance when he failed to investigate, locate witnesses in support of the self-defense claim and request funds to hire an investigator. (2) He was denied his rights under the Confrontation Clause through the State's introduction of testimony from Officer Mitchell that Darrin Dillon identified Brown as the shooter, which was not subject to cross-examination, and through the presentation of his co-defendant's testimony.

The Louisiana Fifth Circuit denied the application on March 4, 2010, finding no merit in the ineffective assistance of counsel claims and no error in the trial court's ruling on that issue. The court further determined that the Confrontation Clause issue was

---

[18]St. Rec. Vol. 5 of 6, Hearing Transcript, 11/4/09; Trial Court Order, 3/26/09; Trial Court Order (2), 3/26/09. Brown's counsel filed an amended application for post-conviction relief reurging the ineffective assistance of counsel arguments. St. Rec. Vol. 5 of 6, Application for Post-Conviction Relief, 4/6/09.

[19]St. Rec. Vol. 5 of 6, Judgment with Reasons, 12/1/09.

[20]St. Rec. Vol. 5 of 6, 5th Cir. Writ Application, 10-KH-50, 1/15/10.

procedurally barred from post-conviction review under La. Code Crim. P. art. 930.4, because it could have been raised on direct appeal and also was not raised at trial. The court also commented that the Confrontation Clause argument otherwise was without merit.

Brown's counsel sought review of this ruling in the Louisiana Supreme Court, and the court denied the application without stated reasons on December 10, 2010.[21]

II.  FEDERAL HABEAS PETITION

On September 8, 2011, the clerk of this court filed Brown's petition for federal habeas corpus relief in which, construed broadly, he asserts five (5) grounds for relief:[22] (1) The evidence was insufficient to prove beyond a reasonable doubt that Brown did not act in self-defense. (2) The evidence was insufficient to support the verdict, because it proved at best that the killing was manslaughter done in the heat of passion as a result of a confrontation brought on by the gang lurking in front of Bailey's residence. (3) The court should have declared a mistrial in view of the State's improper closing argument reference to Brown's failure to testify at trial. (4) Counsel provided ineffective assistance where he failed to investigate, locate witnesses in support of the self-defense claim and

---

[21]Brown v. Cain, 51 So.3d 721 (La. 2010); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2010-KP-0751, 12/10/10; Copy of La. S. Ct. Writ Application, unfiled (dated 4/1/10). I again note that the State failed to provide the court with certified copies of the Louisiana State Court records.

[22]Rec. Doc. No. 1, pp. 23-24. My numbering of the claims does not necessarily match the numbers appearing on pages 23 and 24 of Brown's memorandum in support of the petition.

request funds to hire an investigator. (5) He was denied his rights under the Confrontation Clause when the State introduced testimony from Officer Mitchell that Darrin Dillon identified Brown as the shooter, which was not subject to cross-examination, and through the presentation of his co-defendant's testimony.

Brown later amended his petition to include the following grounds for relief, including supplemental supporting argument:[23] (1) Counsel provided ineffective assistance through his (a) failure to investigate; call witnesses, specifically Alice Cook III and Jamie Brock; and present an available defense at trial; (b) failure to object to inadmissible hearsay; (c) allowing the State to discontinue the testimony of Elaine Dunn; and (d) failure to make the proper showing to procure funds for an investigator. (2) He was denied his rights under the Confrontation Clause when the State allowed Officer Mitchell to testify regarding statements made by Darrin Dillon that Brown was the shooter and through the presentation of his co-defendant's testimony.

The State filed an answer and memorandum in opposition to Brown's original petition, arguing simply that Brown is not entitled to relief for the reasons stated by the Louisiana Fifth Circuit on direct appeal and on post-conviction review.[24] The State was

---

[23]Rec. Doc. Nos. 8, 10.

[24]Rec. Doc. No. 7.

granted additional time to respond to Brown's amended petition,[25] but did not do so. Despite the meager nature of the State's briefing and the absence of records from the Louisiana Supreme Court, I find that the record and briefing are sufficient for the court to address Brown's claims without further response from the State.

## III.    GENERAL STANDARDS OF REVIEW

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[26] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Brown's petition, which, for reasons discussed below, is deemed filed in this federal court on December 29, 2010.[27]

---

[25]Rec. Doc. No. 10.

[26]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[27]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). According to the records of clerk of this court, Brown's petition was first received in that office and tendered for filing on January 5, 2011, without the request fee or completed pauper application. The petition was filed by the clerk of court on September 8, 2011, when the filing fee was paid. Brown dated the signature on the petition on December 29, 2010. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes the timeliness of Brown's filing, on ground that it has been less than one year from completion of his state post-conviction review. Timeliness under the AEDPA runs from finality of the conviction, not completion of post-conviction review. 28 U.S.C. § 2244(d); Duncan v. Walker, 533 U.S. 167, 179-80 (2001). Nevertheless, my review of the record persuades me that Brown's federal petition was timely filed under the AEDPA.

The State also indicates that Brown has exhausted state court remedies. That concession, however, was addressed to the claims raised in the original petition. Brown has since amended his petition to include additional theories in support of his ineffective assistance of counsel claim that were not exhausted in the state courts beyond the trial court level. These theories are that counsel failed to object to hearsay and that counsel allowed the State to stop Elaine Dunn's testimony during trial. As outlined above in my summary of the case history, these arguments were not raised in the writ applications filed by Brown or his counsel in the Louisiana Fifth Circuit or the Louisiana Supreme

Court.  These claims are therefore not exhausted.  <u>See</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004).  Nevertheless, because these theories, and the rest of Brown's ineffective assistance of counsel arguments, are clearly without merit, I will address them without requiring full exhaustion. 28 U.S.C. § 2254(b)(2).

By adoption of the appellate court's rulings, the State raises that Brown's Confrontation Clause argument is barred by procedural default.  This was the holding of the Louisiana Fifth Circuit on post-conviction review.  I will address this procedural bar defense before proceeding to the merits of Brown's remaining claims.

IV.    PROCEDURAL DEFAULT (CLAIM NO. 5)

In this federal petition, Brown alleges that the State violated his right to confrontation through the testimony of Officer Mitchell and his co-defendant.  As outlined above, on March 4, 2010, the Louisiana Fifth Circuit found this claim to be procedurally barred from review pursuant to La. Code Crim. P. 930.4(B) and/or (C) for failure to raise it on appeal or in the proceedings leading to his conviction.  This was the last reasoned decision on the issue by a state court.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 802 (1991).  For the following reasons, the claim is procedurally barred and may not be addressed by this court.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991); <u>Glover v. Cain</u>, 128 F.3d 900, 902 (5th Cir. 1997); <u>Amos v. Scott</u>, 61 F.3d 333, 338 (5th Cir. 1995) (citing <u>Harris v. Reed</u>, 489 U.S. 255, 260, 262 (1989)). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. <u>Amos</u>, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. <u>Harris</u>, 489 U.S. at 263; <u>Glover</u>, 128 F.3d at 902. The last reasoned decision of the Louisiana Fifth Circuit relied on La. Code Crim. P. art. 930.4(B) and (C) to dismiss Brown's confrontation clause issue.

A.    <u>INDEPENDENT AND ADEQUATE</u>

For the state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. <u>Amos</u>, 61 F.3d at 338. The United States

Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999). To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. Glover, 128 F.3d at 902.

La. Code Crim. P. art. 930.4(B) and (C) are clearly independent state law procedural grounds for denying review of an improperly raised post-conviction claim. Bennett v. Whitley, 41 F.3d 1581 (5th Cir. 1994) (Article 930.4 is independent and adequate basis to federal review); Washington v. Cain, No. 98-0584, 2000 WL 863980, at *4 (E.D. La. June 27, 2000) (same). These state procedural bars are presumptively adequate when the state court expressly and regularly relies on them in deciding not to review a claim for collateral relief. Glover, 128 F.3d at 902. This is true in Brown's case as well.

The state court in this case expressly ruled that Brown was not entitled to relief on this claim, because it was not raised on appeal and was not raised at trial, the pre-conviction proceeding. I find that the bars imposed under La. Code Crim. P. art. 930.4(B) and (C) are both independent and adequate to bar review of the merits of Brown's confrontation clause issue.

B.     <u>CAUSE AND PREJUDICE</u>

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  <u>Glover</u>, 128 F.3d at 902 (citing <u>Coleman</u>, 501 U.S. at 731-32); <u>Amos</u>, 61 F.3d at 338-39 (citing <u>Harris</u>, 489 U.S. at 262; <u>Engle v. Isaac</u>, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  <u>Id</u>., at 486.

In this case, Brown has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana Fifth Circuit.  My review of the record does not support a finding that any factor external to the defense prevented Brown from raising these claims in a procedurally proper manner.  I have also reviewed his ineffective assistance of counsel claim and find it to be without merit, thereby providing

no cause for the default. The record reflects no action or inaction by the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." <u>Hogue v. Johnson</u>, 131 F.3d 466, 497 (5th Cir. 1997) (citing <u>Engle</u>, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. <u>Ratcliff v. Estelle</u>, 597 F.2d 474 (5th Cir. 1979) (citing <u>Lumpkin v. Ricketts</u>, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Brown's Confrontation Clause argument is therefore procedurally barred from review by this federal habeas corpus court. <u>See</u> <u>Trest v. Whitley</u>, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), <u>vacated on other grounds</u>, 522 U.S. 87 (1998).[28]

C.      FUNDAMENTAL MISCARRIAGE OF JUSTICE

Brown may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. <u>Hogue</u>, 131 F.3d at 497 (citing <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage

---

[28]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not <u>required</u> to raise the procedural default argument sua sponte. <u>Id</u>.

of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); Nobles, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

Brown provides no indication and the record contains nothing that suggests his actual innocence on the underlying conviction. He fails to present any evidence or argument of factual innocence to contravene his conviction. For these reasons, Brown has failed to overcome the procedural bar, and his Confrontation Clause claim must be dismissed with prejudice for that reason.

V.    STANDARDS OF A MERITS REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.    SUFFICIENCY OF THE EVIDENCE (CLAIM NOS. 1 AND 2)

Brown argues that the State failed to prove with sufficient evidence that he did not act in self-defense.  He also argues that the evidence was not sufficient to prove second degree murder and, at best, only established manslaughter. His counsel asserted these same arguments on direct appeal to the Louisiana Fifth Circuit.  The court denied relief, finding the claims without merit under the standards set forth in Jackson v. Virginia, 443 U.S. 307 (1979), and related state law.  The Louisiana Supreme Court also denied relief without further comment.

Under Jackson, this court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  Id., 443 U.S. at 319; Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008); Williams v. Cain, 408 Fed. Appx. 817, 821 (5th Cir. 2011).  Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.  Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n. 16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  See McDaniel v. Brown, __ U.S. __, 130 S.Ct. 665, 672, 674 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 Fed. Appx. 89, 91 (5th Cir. 2009) (Jackson

standard relies "upon the record evidence adduced at the trial.") (quoting <u>Jackson</u>, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does <u>not</u> include review of the <u>weight</u> of the evidence or the <u>credibility</u> of the witnesses, because those determinations are the exclusive province of the jury. <u>United States v. Young</u>, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing <u>United States v. Garcia</u>, 995 F.2d 556, 561 (5th Cir. 1993); <u>see also</u> <u>Jackson</u>, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir. 2005).

A reviewing federal habeas court is <u>not</u> authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. <u>Alexander v. McCotter</u>, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he <u>Jackson</u> inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" <u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001) (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. <u>Perez</u>, 529 F.3d at 594; <u>Maes v. Thomas</u>, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Brown suggests that the evidence was sufficient to prove only manslaughter.[29] The applicable legal standard, however, requires that this court consider whether the evidence was sufficient to prove second degree murder, which was the verdict in this case.

Brown was charged in the amended indictment and convicted of second degree murder, which is defined in relevant part by Louisiana law as "the killing of a human being . . . when the offender has a specific intent to kill or to inflict great bodily harm."[30] La. Rev. Stat. Ann. § 14:30.1(A)(1). The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. Ann. § 14:10(1).

---

[29]In Louisiana, manslaughter is defined as a "homicide which would be first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." La. Rev. Stat. Ann. § 14:31(A)(1); <u>State v. Logan</u>, 34 So.3d 528 (La. App. 2d Cir. 2010); <u>State v. Quiambao</u>, 833 So.2d 1103 (La. App. 2d Cir. 2002).

[30]This is the definition used to charge the jury. St. Rec. Vol. 3 of 6, Trial Transcript (continued), p. 573, 9/19/06; St. Rec. Vol. 4 of 6, Trial Transcript, pp. 990-91, 9/21/06.

Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions. <u>State v. Sharlhorne</u>, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989); <u>State v. Tate</u>, 851 So.2d 921, 930 (La. 2003) (citing <u>State v. Brooks</u>, 505 So.2d 714, 717 (La. 1987)). Specific intent to kill can be implied by the intentional use of a deadly weapon, such as a knife or gun. <u>State v. Collins</u>, 43 So.3d at 251 (citing <u>State v. Brunet</u>, 674 So.2d 344, 349 (1996)).

At trial, the jury heard the testimony of several witnesses that shots were first fired from James's yellow car in which Brown was the front-seat passenger. Ronald Dunn Jr. testified that he and his friends, Lionel Griffin, Donovan Bailey, Pettus Prine, Von Dunn, Nathaniel Hall and Charlie Palmer, were talking while standing in Bailey's front yard when they saw the yellow car approaching.[31] Dunn saw Brown in the front passenger seat.[32] At that time, he also saw his mother, Elaine Dunn, driving up the street behind the yellow car.[33] He then saw Brown reaching for something like a gun.[34] He called to his mother to go and when he turned back, he heard a gunshot and hit the ground. He then

---

[31]St. Rec. Vol. 3 of 4, Trial Transcript (continued), pp. 589-91, 9/19/06.

[32]<u>Id</u>., pp. 592-93.

[33]<u>Id</u>., p. 593.

[34]<u>Id</u>., p. 594.

heard several shots, but was not sure how many.[35]  When it was over, he saw that both

Griffin and his mother's car had been shot.  Dunn denied that any of his friends had a gun

or fired a shot at the car.[36]  Dunn also testified on cross-examination that his head was

turned, so he did not actually see Brown shoot.[37]

Von Dunn, Ronald's younger brother, testified that he had been in an altercation

with a friend of Brown and James named Deedeewee just three days before the murder.[38]

Both Brown and James were in the car when Deedeewee punched Von in the mouth.

Von also testified that he saw the yellow car pull up in front of Bailey's house with

Brown in the passenger seat.[39]  As the car passed the house, Von saw Brown fire a first

shot from the car window before he ran to the house next door.  Von heard at least five

other shots, although he did not see who was shooting.  He too testified that no one with

his group had a gun or shot a gun.[40]  Nathaniel Hall testified similarly to Von Dunn,

stating that he saw Brown shoot the first shot back toward him and Griffin as Brown

---

[35]Id., p. 595.

[36]Id., p. 596.

[37]Id., p. 597.

[38]Id., pp. 615-16.

[39]Id., p. 618.

[40]Id., pp. 618-19.

hung his torso from the passenger window of the car.[41]  Hall heard about six or seven shots before he ducked and ran.[42]

Pettus Prine also testified that he was at Bailey's house with his girlfriend, Jamie Brock, in her car in the driveway when the shooting occurred.[43]  He heard voices, so he opened the car window to see what was happening.  As the car passed the house, the passenger, Brown, stuck out a pistol and started shooting.[44]  Prine saw the first shot fired by Brown and then ducked.[45]  He heard more than five shots.[46]

Donovan Bailey corroborated the testimony of the Dunn brothers, Hall and Prine.[47]  Bailey testified that he saw Brown reach in the car for a gun, but he did not see Brown shoot.[48]  At that time, he was looking at Ronald Dunn, who had an altercation with Brown the night before, because Dunn was calling out to his mother to leave.[49]  He

---

[41]Id., pp. 634, 640, 642.

[42]Id., p. 635.

[43]Id., pp. 648-49.

[44]Id., p. 649.

[45]Id., p. 650.

[46]Id., p. 652.

[47]Id., pp. 662-63.

[48]Id., pp. 663, 670.

[49]Id., p. 663; St. Rec. Vol. 4 of 6, Trial Transcript (continued), p. 766 (Lieutenant Kenneth Mitchell), 9/20/06.

recalled that the shots came from the passenger side of the yellow car in which Brown was the front seat passenger. He also stated that no one in his group had a gun.[50]

The jury also heard testimony about exhibits showing the bullet holes in Mrs. Dunn's car, the crime scene, the .9 mm and .45 caliber spent bullet casings and the victim's autopsy.[51] Sergeant Michael Davis identified a .9 mm semi-automatic pistol that was recovered during the investigation.[52] He testified that the bullet evidence indicated that more than one gun was fired at the scene. He also indicated that there was no DNA evidence recoverable from the casings.

Patrick Lane, an expert in firearms identification, testified that the bullet fragment retrieved from Griffin's brain during the autopsy was consistent with a .45 caliber automatic weapon.[53] He also determined that the two .45 caliber casings found at the scene were fired from the same gun.[54] The three .9 mm casings were also from the same semi-automatic weapon; however, they were not likely to have been fired from the gun recovered during the investigation.[55]

---

[50]Id., p. 664.

[51]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 693, 699, 720 (Sergeant Michael Davis), 9/20/06.

[52]Id., p. 703.

[53]Id., p. 733; St. Rec. Vol. 4 of 6, Trial Transcript (continued), p. 757 (Dr. Karen Ross), 9/20/06.

[54]Id., p. 735.

[55]Id., pp. 737, 739.

Wendell James, Brown's co-defendant, testified on behalf of the defense after being advised of the consequences.[56] He testified that, as he drove past Bailey's house, a "light colored guy," later identified as Pettus Prine, pulled a gun out and started shooting.[57] He recalled that a bullet hit the side of his car. Brown then stuck his hand out of the window and shot back. After they got home, James gave the car to Brown and he never saw it again. James also admitted being in or at altercations with Von Dunn and Ronald Dunn before the day of the shooting.[58] He acknowledged that he entered a plea of guilty to accessory after the fact to second degree murder before he testified at the trial, but he did not realize that he was acknowledging that Brown committed murder.[59]

The jury obviously found credible the evidence demonstrating that Brown had been involved in violent disagreements with several of the men standing in Bailey's front yard, including the Dunn brothers. Substantial evidence established that on the day after his last argument with Ronald Dunn Jr., Brown, while seated in the front passenger seat of James's slow moving car, pulled out a gun and shot multiple rounds toward Ronald Dunn Jr., Lionel Griffin, Donovan Bailey, Pettus Prine, Von Dunn, Nathaniel Hall and Charlie Palmer as they stood unarmed in Bailey's front yard. As a result of the shooting,

---

[56]St. Rec. Vol. 4 of 6, Trial Transcript (continued), pp. 844-45, 9/20/06.

[57]Id., p. 848.

[58]Id., pp. 864-66.

[59]Id., pp. 854-857, 871.

Griffin was killed. The jury obviously found the eye witness testimony credible, even though some witnesses testified that they heard the shot, but did not see Brown shoot.

There was no evidence to support the suggestion that Brown acted with sudden passion or heat of blood to support a manslaughter conviction. Instead, the evidence and testimony were more than sufficient for a reasonable jury to conclude that Brown acted with specific intent to kill or commit great bodily harm when he shot from the car window toward the crowd.

The evidence was also sufficient to overcome Brown's self-defense argument. With respect to self-defense, Louisiana law provides that a homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. La. Rev. Stat. Ann. § 14:20(1). However, a person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense, unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. Rev. Stat. Ann. § 14:21. While there is no requirement that the defendant must actually retreat from the confrontation, the possibility of escape is a factor to be considered in determining if the defendant had a reasonable belief that the use of deadly force was

necessary to avoid the danger.  <u>State v. Woodhead</u>, 866 So.2d 995, 1000 (La. App. 5th Cir. 2004).

Under Louisiana law, the burden of proof is on the State to prove that a murder was not committed in self-defense:

> [W]hen an accused raises self-defense, the burden is on the State to prove, beyond a reasonable doubt, that he did not act in self-defense.  "The determination of a defendant's culpability focuses on a two fold inquiry: 1) whether, from the facts presented, the defendant could have reasonably believed his life to be in imminent danger, and 2) whether deadly force was necessary to prevent the danger."  <u>State v. Mills</u>, 04-489, p. 7 (La. App. 5 Cir. 3/29/05), 900 So.2d 953, 959, <u>writ denied</u>, 05-1470 (La.1/13/06), 920 So.2d 235.  "Factors to consider in determining whether a defendant had a reasonable belief the killing was necessary are the excitement and confusion of the situation, the possibility of using force or violence short of killing and the Defendant's knowledge of the assailant's bad character."  <u>State v. Nelson</u>, 34,077, p. 6 (La. App. 2 Cir. 12/6/00), 775 So.2d 579, 584.

<u>State v. Johnson</u>, 948 So.2d 1229, 1234 (La. App. 3rd Cir.), <u>writs denied</u>, 965 So.2d 398, 399 (La. 2007).

At trial, while there was evidence to indicate that bullets from two different guns were found at the scene, the credible eyewitness testimony also indicated that none of the men in Bailey's front yard had a gun or shot a gun that night.  The co-defendant, Wendell James, was the only witness to testify that one of the men, Pettus Prine, had a gun and fired first at the car.  The jury obviously did not believe his version.  Nevertheless, there was no evidence that the victim, Griffin, threatened Brown at any time.  Thus, even if the jury believed James's testimony about Prine, the evidence showed that, rather than

simply driving away and withdrawing from the danger, Brown fired his weapon into the crowd, a circumstance negating self-defense under Louisiana law.

In addition, there was no physical evidence to support James's version of the events. Spent casings were found by the police in the street, not in the driveway where Prine was sitting in the car with his girlfriend. The State's eyewitnesses testified that the only shots were fired from James's vehicle. At least one witness reported to the police that shots were also fired from the driver's side, where James was seated, which would have explained the different bullets.[60] For these reasons, the evidence was sufficient for the jury to find that the State had disproved the self-defense theory.

The state courts' denial of relief on Brown's claim was not contrary to, or an unreasonable application of, Supreme Court precedent. Brown is not entitled to relief on this claim.

VII.    REMARKS BY THE PROSECUTOR (CLAIM NO. 3)

Brown alleges that the state trial court should have declared a mistrial when, during closing arguments, the prosecutor improperly referred to Brown's failure to testify at trial. Brown does not provide any explanation or argument in support of this claim. This claim was first raised by Brown's counsel on direct appeal. In support of the claim

---

[60]St. Rec. Vol. 4 of 6, Trial Transcript (continued), p. 821 (Lt. Mitchell), 9/20/06.

at that time, counsel first referenced the following statement made by the prosecutor during closing arguments:[61]

> Ladies and gentlemen, my argument to you is that there is a certain intellectual dishonesty, if you will, about a defense that comes in and says it's not me, it's not my client, my client wasn't shooting, but if it turns out that my client was shooting, if it turns out that it was him the passenger, then it was self-defense.

Defense counsel objected to this statement as improper argument. The state trial court did not sustain the objection, but instructed counsel to rephrase his argument.[62]

The prosecutor then told the jury that "the way to present self-defense is to be up front and say, yes, I was there . . . yes, I did the shooting."[63] Defense counsel lodged the same objection. The trial court noted the objection and instructed the prosecutor to proceed.[64] The prosecutor went on to argue:[65]

> Now, the way to present self-defense is to be straight up front. Yes, I did the shooting but the guy was threatening my life. He was threatening me with serious bodily harm. I had to shoot him, I had no alternative. Okay? I had no, I had no other alternative way of resolving this danger to my life but to shoot him. That's the way you present self-defense.

---

[61]St. Rec. Vol. 4 of 6, Trial Transcript, p. 959, 9/21/06.

[62]Id., p. 960.

[63]Id., pp. 961-961.

[64]Id., p. 961.

[65]Id., p. 961.

There was no immediate objection to this comment.  The prosecutor continued by discussing the inconsistent testimony of James, the co-defendant.  At some point, the court allowed a brief recess at the jurors' request.  Before the jury was recalled for the prosecution to continue its closing, defense counsel moved for a mistrial, arguing that the prosecutor's statement (quoted above) was a comment on Brown's failure to testify at trial.[66]  Counsel specifically challenged the prosecutor's statement regarding how one must prove self-defense, noting that the burden was on the State to disprove self-defense.[67]

The trial court denied the request for a mistrial, and instead admonished the jury as follows:[68]

> Before Mr. O'Regan continues his argument, ladies and gentlemen, in looking back on something Mr. O'Regan said I want to make a correction because he made an argument that I think may give you the wrong impression, depending on how you take it.  He referred to the fact that he thought in, in order to present self-defense it should have happened in a certain way and he alluded to an admission that I shot and then I defended.  I want you to disregard that statement and that part of the argument made by Mr. O'Regan.  It is not proper because I think it alludes to the fact that I already told you you cannot consider the fact that a defendant does not take the stand and does not take, does not testify.  So, of course, he does not have to make an admission of any kind.  So I'm going to ask you to disregard that statement and I'll give you in another

---

[66]Id., p. 968.

[67]Id., pp. 268-69.

[68]Id., pp. 972-73, 975-76.

instruction later on, which also tells you you cannot consider the fact that the defendant did not take the stand, did not testify.

On appeal, the Louisiana Fifth Circuit, relying on Louisiana law, determined that the remarks at issue were neither a direct reference nor an intended indirect reference to Brown's failure to testify. The court instead resolved that the comment was an attempt to explain self-defense to the jury. The court found no error in the trial court's denial of the motion for mistrial. The Louisiana Supreme Court also denied relief without added reasons.

Assuming that Brown intended to raise these same arguments in this court (although he has not asserted any particular supporting argument), he is not entitled to relief. A trial court's denial of Brown's motion for a mistrial triggers federal habeas corpus relief only if it was "'error ... so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause.'" Hernandez v. Dretke, 125 Fed. Appx. 528, 529 (5th Cir. Feb. 16, 2005) (quoting Bridge v. Lynaugh, 838 F.2d 770, 772 (5th Cir.1988)). To obtain relief, the petitioner must show that the state trial court's error, if any, had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). The petitioner must show that "there is more than a mere reasonable possibility that [the error] contributed to the verdict. It must have had a substantial effect or influence in determining the verdict." Woods v. Johnson, 75 F.3d 1017, 1026 (5th Cir.1996) (emphasis omitted). An error is harmless, however,

when the evidence of the defendant's guilt is overwhelming. <u>Taylor v. Cain</u>, 545 F.3d 327, 336 (5th Cir. 2008).

Brown has not demonstrated error on the part of the state trial court in denying the motion for mistrial. Louisiana law sets forth the grounds for a mistrial. A mistrial is mandatory in the following circumstances:

> Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
> (1)　Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
> (2)　Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
> (3)　The failure of the defendant to testify in his own defense; or
> (4)　The refusal of the judge to direct a verdict.

La. Code Crim. P. art. 770.[69]

Louisiana law further provides for a jury to be admonished by the court under certain circumstances or for the mistrial to be granted if the admonishment is not sufficient:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when

---

[69]Louisiana law also would also have permitted a mistrial to be ordered where "[t]here is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law." La. Code Crim. P. art. 775(3).

the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:

(1)     When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or

(2)     When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.

In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

La. Code Crim. P. art. 771.

The Louisiana courts determined that the comments made by the prosecution during closing arguments were neither direct nor indirect references to Brown's failure to testify at trial. The Louisiana Fifth Circuit found that the comments were an attempt to define self-defense, which would not have required the granting of a mistrial under the law cited above. In compliance with Louisiana law, the state trial court gave the admonishment necessary to prevent the jury from misusing the prosecutor's statements. Thus, there was no error by the state trial court in denying the motion for mistrial.

Even under federal law, the comments made by the prosecutor were not constitutionally impermissible such as to warrant a mistrial. A prosecutor's argument does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the state court trial was rendered fundamentally unfair in violation of due process. Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988). Due process requires

reversal when the prosecutor's argument or comments "so infect the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986); Bell v. Lynaugh, 828 F.2d 1085, 1095 (5th Cir. 1987). The prosecutor's remarks must be evaluated in the context of the entire trial. Greer v. Miller, 483 U.S. 756, 765-66 (1987) (citing Darden, 477 U.S. at 179); Kirkpatrick v. Blackburn, 777 F.2d 272, 281 (5th Cir. 1985). To obtain federal habeas relief based on allegations of improper prosecutorial comment or argument, a petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." Jones, 864 F.2d at 356; Hogue v. Scott, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994).

Comments by a prosecutor on a defendant's exercise of his Fifth Amendment right not to testify are constitutionally impermissible. Griffin v. California, 380 U.S. 609, 615 (1965). To determine whether a petitioner's Fifth Amendment rights were violated, the proper inquiry is: "(1) whether the prosecutor's manifest intent was to comment on the defendant's silence or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence." (internal quotation marks omitted) United States v. Grosz, 76 F.3d 1318, 1326 (5th Cir. 1996) (quoting United States v. Collins, 972 F.2d 1385, 1406 (5th Cir. 1992)).

Under the first possibility, "[t]he prosecutor's intent is not manifest if there is some other, equally plausible explanation for the remark." Id. Under the second possibility, "the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so." (citation, emphasis, and internal quotation marks omitted) Id. Moreover, the Fifth Amendment is not violated when the comments are made in "a fair response to a claim made by defendant or his counsel." United States v. Robinson, 485 U.S. 25, 32 (1988).

In this case, the comments made by the prosecutor during closing arguments were neither prohibited by the Due Process Clause nor in violation of the Fifth Amendment. Review of the State's closing argument indicates that the prosecutor was attempting to demonstrate the parameters for presenting argument in support of self-defense. A plain reading of the words used by the prosecutor indicates that the comments were made in an effort to disprove the existence of any evidence to support self-defense, not to comment on Brown's failure to testify.

The record does not establish that the prosecutor made an improper reference to Brown's failure to testify or that the jury necessarily took the prosecutor's remarks as such a reference, especially in light of the admonishment and other instructions given by the state trial court. Without a showing of some impropriety, Brown fails to state a basis

for federal habeas relief. The state courts' denial of relief on this issue is not contrary to, or an unreasonable application of, Supreme Court law.

## VIII.   ASSISTANCE OF COUNSEL (CLAIM NO. 4)

Brown alleges that his trial counsel was ineffective for failure to investigate; failure to locate and call witnesses, specifically Alice Cook III and Jamie Brock, in support of the self-defense claim; failure to object to inadmissible hearsay; allowing the State to discontinue the testimony of Elaine Dunn; and failure to make the proper showing to procure funds for an investigator. Brown asserted these arguments on post-conviction review in the state trial court, and relief was denied for lack of merit after a full evidentiary hearing. He pursued further relief only on the theories that counsel failed to investigate, to call witnesses, and to obtain funds to hire an expert, and both the Louisiana Fifth Circuit and the Louisiana Supreme Court denied relief.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), in which the

Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough under Strickland, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively

reasonable professional assistance." <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999) (citing <u>Strickland</u>, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. <u>Strickland</u>, 466 U.S. at 689; <u>Neal v. Puckett</u>, 286 F.3d at 236-37; <u>Clark v. Johnson</u>, 227 F.3d 273, 282-83 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that, under <u>Strickland</u>, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." <u>Harrington v. Richter</u>, __ U.S. __, 131 S.Ct. 770, 788 (2011). The <u>Harrington</u> Court went on to recognize the high level of deference owed to a state court's findings under <u>Strickland</u> in light of the AEDPA:

> The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

"A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude

that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell v. Cone, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689). This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir.), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore v. Johnson, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

A.   FAILURE TO INVESTIGATE AND CALL WITNESSES TO SUPPORT THE SELF-DEFENSE CLAIM

"'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" (emphasis added, citation omitted) Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998). A petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown. Diaz v. Quarterman, 239 Fed. Appx. 886, 890 (5th Cir.

2007) (citing <u>Strickland</u>, 466 U.S. at 696 in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). Rather, to prevail on a such claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. <u>See</u> <u>Moawad</u>, 143 F.3d at 948; <u>see also</u> <u>Brown v. Dretke</u>, 419 F.3d 365, 375 (5th Cir. 2005); <u>Davis v. Cain</u>, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). Brown has not met this burden.

In this case, Brown alleges that his counsel failed to investigate the witnesses, Alice Cook III and Jamie Brock (Pettus Prine's girlfriend), and failed to call those witnesses at trial. He also complains that counsel did not interview Elaine Dunn to see if she knew who fired the .9 mm gun into the front of her car.

As an initial matter, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" <u>Graves v. Cockrell</u>, 351 F.3d 143, 156 (5th Cir. 2003) (<u>quoting</u> <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978)). "'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of <u>Strickland</u> if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be

unwise.'" <u>Williams v. Cockrell</u>, 31 Fed. Appx. 832 (5th Cir. 2002) (<u>quoting</u> <u>Williams</u> <u>v. Cain</u>, 125 F.3d 269, 278 (5th Cir. 1997)).

Brown has presented nothing to the state courts or this court, other than his self-serving argument, to establish that counsel did not contact these witnesses or investigate them as potential, favorable trial witnesses. As resolved by the state courts, even at the evidentiary hearing, Brown did not present any proof as to what these witnesses would have testified or even that these witnesses would have been available to testify at trial. Brown also testified at the evidentiary hearing that he gave his counsel the wrong last name for two of the witnesses he allegedly provided before trial.[70]

In spite of Brown's comments to the contrary in his brief, the record indicates that none of the witnesses now identified by him were called at the evidentiary hearing. Brown instead called other witnesses whose names were apparently not provided to counsel prior to trial and whose names were not listed on the police reports as witnesses to the incident.[71]

Brown further argues that there were other people present on the night of the shooting that should have been called to counter the witnesses brought by the State who testified that Brown shot first. Again, he has not provided the names of any of these

---

[70]St. Rec. Vol. 5 of 6, Hearing Transcript, p. 20, 11/4/09.

[71]St. Rec. Vol. 5 of 6, Judgment With Reasons, p. 5, 12/1/09.

people or that they would have been known to or discoverable by counsel even upon further investigation. Brown provides no proof as to what these unidentified witnesses would have testified or that it would have been favorable to his defense.

Under Supreme Court precedent, "an attorney's strategic choices, usually based on information supplied by the defendant and gathered from a thorough investigation of the relevant law and facts, 'are virtually unchallengeable.'" Bryant v. Scott, 28 F.3d 1411, 1415 (5th Cir.1994) (quoting Strickland, 466 U.S. at 691, 104 S.Ct. 2052). While an attorney must engage in a reasonable amount of pretrial investigation, "the reasonableness of an attorney's investigation may critically depend on the information forwarded by the defendant and the defendant's own strategic decisions about his representations." Bryant, 28 F.3d at 1415.

Brown has not presented anything to the state courts or this court that would indicate that counsel acted outside of sound trial strategy in choosing his witnesses, the focus of the case and the presentation of the self-defense argument. The fact that the defense was not successful does not mean that counsel was deficient. See Martinez v. Dretke, 99 Fed. Appx. 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a

particular act or omission of counsel was unreasonable." <u>Strickland</u>, 466 U.S. at 689 (citations omitted).

Brown has provided no basis to undermine the deference due his counsel's trial decisions or the findings of the state courts regarding his effective performance. He is not entitled to relief on this claim.

B.      <u>FAILURE TO OBJECT TO HEARSAY</u>

Brown alleges that his counsel's performance was constitutionally deficient because he failed to object to inadmissible hearsay at trial. As in the state courts, he has pointed to no particular testimony or examples of alleged hearsay, even in his amended petition and supporting memorandum. Brown asserted this claim in his state application for post-conviction relief, but it was not any more developed in the state court evidentiary hearing or memoranda. Relief on this claim was denied by the state trial court after the evidentiary hearing, and Brown did not pursue further relief on this issue in the higher state courts.

Hearsay is defined by La. Code Evid. art. 801(C) as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally inadmissible at trial. La. Code Evid. art. 802. However, La. Code Evid. arts. 803 and 804 provide many exceptions to the hearsay rule, none of which apply to this discussion.

Without some showing by Brown, this court is unable to find that counsel should have lodged some particular objection or that counsel's performance was constitutionally deficient or prejudicial.  See Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998), cert. denied, 525 U.S. 1174 (1999) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).  Brown has not met his burden on this issue.  The denial of relief on this issue was not contrary to or an unreasonable application of Strickland.  Brown is not entitled to relief.

C.      DISCONTINUED TESTIMONY OF ELAINE DUNN

Brown argues that his counsel acted deficiently in allowing the State to discontinue the testimony of Elaine Dunn and in not objecting to the introduction of Darrin Dillon's statements to police.  He raised these arguments in his state application for post-conviction relief, which was denied by the state trial court after the evidentiary hearing.  He did not pursue further relief on this issue in the state appellate courts.

Review of the trial transcript indicates that, shortly after taking the stand to give her name and address, the state trial court resolved that Mrs. Dunn's voice was too low to be heard by the jury, even as amplified by the microphone.[72]  Without excusing the witness, the State requested that it be allowed to take a break from the witness stand and

_____

[72]St. Rec. Vol. 3 of 6, Trial Transcript (continued), p. 608-13, 9/19/06.

call her later in the case, and the court granted the request.[73]  She was not recalled to the stand.  As noted by the state trial court, Mrs. Dunn did not testify as to anything substantive.  Although her statements are recorded in the transcript, the jury apparently could not hear or understand what she was saying.[74]

Brown merely speculates as to what Mrs. Dunn might have testified and responded to possible cross-examination. In light of the communication problem, however, there was no basis for counsel to have objected to the recess in her testimony.  The jury, the fact-finder, could not hear her voice. Counsel's performance was not deficient for allowing the recess of a witness who was serving no benefit to the court.

Brown also objects to Officer Mitchell's mention of statements made by Darrin Dillon.  Officer Mitchell testified that, during his investigation after the shooting, he received information from Dillon and several others which led him to Brown as a suspect.  Mitchell testified that Dillon said the same thing in his interview as Ronald Dunn had said, which was the same as Dunn's testimony at trial.[75]  Brown complains that this was hearsay, and he was denied his right to confront Dillon on cross-examination. He claims, therefore, that his counsel was deficient in failing to object to Officer Mitchell's testimony.

---

[73]Id., p. 613.

[74]Id., p. 611.

[75]St. Rec. Vol. 4 of 6, Trial Transcript (continued), p. 765-66, 9/20/06.

The Sixth Amendment's Confrontation Clause gives the accused "[i]n all criminal prosecutions, . . . the right . . . to be confronted with the witnesses against him."  The Confrontation Clause bars the admission of testimonial hearsay. <u>Crawford v. Washington</u>, 541 U.S. 36, 59 (2004).  In <u>Crawford</u>, cited by Brown, the Supreme Court held that the Confrontation Clause permits admission of "[t]estimonial statements of witnesses absent from trial . . . only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."  An out-of-court statement is not hearsay when offered to explain why an officer conducted an investigation in a certain way. <u>United States v. Brown</u>, 560 F.3d 754, 764 (8th Cir. 2009).  Statements also are non-testimonial, and therefore do not implicate the Confrontation Clause, "when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." <u>Davis v. Washington</u>, 547 U.S. 813, 822 (2006).

Officer Mitchell's presentation of non-testimonial statements from Dillon in identifying a potential suspect were not the type of statement which would invoke Confrontation Clause rights. <u>Bowens v. Cain</u>, No. 05-5714, 2011 WL 4381499, at *12 (E.D. La. Sep. 20, 2011).  The statements attributed to Dillon were taken during the investigation immediately after the shooting. Officer Mitchell indicated that the interviews were done in an effort to gather information about potential suspects to further

his investigation. These statements were non-testimonial and otherwise fall outside of the Confrontation Clause. Counsel did not act deficiently in failing to object to this testimony.

Even if the testimony were objectionable, the United States Fifth Circuit Court of Appeals has explained that a violation of the Confrontation Clause does not always warrant habeas relief:

> [V]iolations of the Confrontation Clause are still subject to harmless error analysis . . . To determine whether the error was harmless, we consider the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

(quotation marks omitted) Hafdahl v. Johnson, 251 F.3d 528, 539-40 (5th Cir. 2001); Gochicoa v. Johnson, 118 F.3d 440, 446 (5th Cir. 1997). "The determination of whether the evidence is 'crucial' or 'devastating' . . . recognizes that the erroneous admission of unreliable hearsay may nonetheless be harmless in light of other evidence at trial; by examining whether hearsay was 'crucial' or 'devastating,' the court seeks to determine whether the impermissible hearsay evidence was sufficiently damaging to the defense to warrant reversal." Gochicoa, 118 F.3d at 446-47 (citations omitted); Gochicoa v. Johnson, 238 F.3d 278, 286, 287 n.11 (5th Cir. 2000).

As discussed above, the particular testimony about which Brown complains was neither crucial nor critical to establishing the elements of the crime charged or the actual verdict. Dillon's statements were mentioned only to establish why Officer Mitchell pursued Brown as a suspect and included Brown's picture in a photographic line-up. The statements attributed to Dillon were cumulative of the statements and testimony given by the other witnesses who did testify live at trial and who were cross-examined by Brown's counsel. Those witnesses provided more detailed testimony regarding the events surrounding the shooting and their identification of Brown as the shooter. In the overall context of the trial, the information attributed to Dillon was not significant and was overwhelmed by the testimony of the other live witnesses.

For these reasons, Brown has failed to establish that his counsel acted deficiently or prejudicially in failing to object to Officer Mitchell's testimony about the statements made by Dillon. The denial of relief on this issue was neither contrary to nor an unreasonable application of Supreme Court law.

D.    FUNDS FOR AN INVESTIGATOR

Brown alleges that his counsel was deficient for not seeking funds to hire an investigator to assist in procuring defense witnesses. Construed broadly, he appears to argue that counsel should have requested funds under Ake v. Oklahoma, 470 U.S. 68 (1985), and hired experts to testify as to the viability of his self-defense argument.

Brown asserted this claim in his application for post-conviction relief, and relief was denied by the state trial court, finding that Brown failed to establish how an expert or investigator would have benefitted the defense. The Louisiana Fifth Circuit and the Louisiana Supreme Court also denied relief.

In support of his claim, Brown argues that counsel erred in failing to request funds for an expert pursuant to the Supreme Court opinion in Ake. In Ake, however, the Court held that, when requested, an indigent defendant is entitled to funding for psychiatric expert assistance when he "demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial." Ake v. Oklahoma, 470 U.S. 68, 82-83 (1985). The Supreme Court explained that "when the State has made the defendant's mental condition relevant to his criminal culpability and to the punishment he might suffer, the assistance of a psychiatrist may well be crucial to the defendant's ability to marshal his defense." Ake, 470 U.S. at 80.

Brown's mental competence was not at issue in his trial. His claim is that counsel should have sought funds under Ake to hire an expert to assist in presenting the self-defense claim. The Supreme Court, however, has not extended the holding in Ake beyond the need for expert psychiatric assistance when the defendant has demonstrated a need for such testimony or evaluation. Moreno v. Dretke, 362 F. Supp.2d 773, 811 (W.D. Tex. 2005) (citing Briseno v. Cockrell, 274 F.3d 204, 208-10 (5th Cir. 2001)

(recognizing that the question remains whether the holding in <u>Ake</u> applies to requests for expert assistance outside the field of psychiatry)), <u>aff'd</u>, 450 F.3d 158 (5th Cir. 2006), <u>cert. denied</u>, 549 U.S. 1120 (2007). Brown cannot establish that counsel was deficient in failing to request <u>Ake</u> funds to secure a non-psychiatric expert or investigator.

Even if funds were available for such appointments in the Louisiana courts, an indigent defendant does not have an automatic right to expert assistance upon demand. <u>Yohey v. Collins</u>, 985 F.2d 222, 227 (5th Cir. 1993). Rather, he must "establish a reasonable probability that the requested experts would have been of assistance to the defense and that denial of such expert assistance resulted in a fundamentally unfair trial." <u>Id.</u>; <u>Griffith v. Quarterman</u>, No. 05-70049, 2006 WL 2041291, at *5 (5th Cir. July 21, 2006); <u>see also</u>, <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372 (1993) (citing <u>Strickland</u>, 466 U.S. at 687). Similarly, when a habeas petitioner claims that an investigator should have been hired, federal habeas relief is not warranted unless it is shown that the failure to retain an investigator in fact "substantially prejudiced [the petitioner's] trial." <u>Jackson v. Day</u>, No. 96-30563, 1997 WL 450202, at *2 (5th Cir. July 16, 1997). If the evidence of the petitioner's guilt is overwhelming, that showing cannot be made. <u>Id.</u>, at *3.

Brown has made no such showing. He suggests that an expert or investigator could have assisted in the presentation of his self-defense argument. He has presented

nothing in this court or to the state courts to explain how these hypothetical appointees would have or could have assisted him.

Brown's counsel presented evidence and argument in the best effort to convince the jury that Brown did not shoot first and acted in self-defense. It was well within the province of the jury to make the credibility determinations and otherwise weigh the evidence to conclude that he did not act in self-defense. Brown has pointed to nothing that an expert or other investigator might have presented to sway the jury on that point. There is nothing in the record to suggest that he was prejudiced by counsel's failure to seek funds to hire an expert or investigator to assist in presenting self-defense. On the contrary, the evidence of his guilt was substantial.

Brown has failed to establish that the state courts' denial of relief on this issue was contrary to, or an unreasonable application of, Supreme Court law. He is not entitled to relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the petition of Shannon Brown for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[76]

New Orleans, Louisiana, this ___20th___ day of December, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[76]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.